# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| ANN MARIE TALLEY | |
| Plaintiff, | Civil No. 11-1180 (RBK/KMW) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Anne Marie Talley ("Plaintiff") to file a Second Amended Complaint. Plaintiff alleges that she was wrongfully denied the proceeds of her deceased husband's life insurance policy due to the United States' negligent handling of a form he submitted for the purpose of changing his policy beneficiary, and that the United States breached a fiduciary duty owed to Plaintiff and her late husband. The United States argues that Plaintiff's motion to amend is futile because her tort claims are not cognizable under the Federal Tort Claims Act ("FTCA"). For the following reasons, Plaintiff's motion will be **DENIED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history of this case was set forth in the Court's Opinion of January 24, 2014 as follows:

> Walter E. Talley, III began working as a civilian employee of the United States
> Department of the Navy on January 21, 1981. United States' Statement of

Material Facts Not in Dispute ("SUMF") ¶ 1.  In 1992, Mr. Talley executed a Designation of Beneficiary Form for the Federal Employees' Life Insurance ("FEGLI") Program, which designated his son, Walter E. Talley, IV, as the sole beneficiary of his life insurance policy.  Id. ¶ 3.  On August 26, 2005, Mr. Talley married Plaintiff.  Id. ¶ 6.  In 2009, he sought to change three beneficiary forms relating to his benefits and pay as a federal employee.  Id. ¶ 7.  On or about May 4, 2009, he completed the three forms, known as Designation of Beneficiary forms.  Id. ¶¶ 8-10.  On two occasions in May, 2009, Mr. Talley went to the Financial Management Office for the Norfolk Naval Shipyard Detachment, Naval Foundry and Propeller Center, in Philadelphia, Pennsylvania, and sought assistance with the forms.  Id. ¶ 11.  On the first occasion, he presented two of the forms that required witness signatures, and two employees of the Financial Management office signed as witnesses.  The two forms sought to designate Plaintiff as the beneficiary for unpaid compensation of a deceased civilian employee, and as the beneficiary of a Civil Service Retirement System account.  Id. ¶¶ 8, 9, 13, 14.  Plaintiff alleges that Mr. Talley left those forms with the Financial Management Office for filing, while the United States contends that Mr. Talley took the documents with him.  Id. ¶ 15; Pl. Opp'n at 2.  Those two forms were required to be filed with Mr. Talley's "employing agency" prior to his death in order to be valid.  SUMF, ¶ 17.  Each was received in May, 2009, by the Civilian Benefits Center ("CBC") in Philadelphia, Pennsylvania, and certified as valid.  Id. ¶¶ 20, 23.  Plaintiff was paid benefits as a result of the filing of these two forms, and neither of these are in dispute.

The form that is at issue in this matter is the Designation of Beneficiary for Mr. Talley's life insurance policy provided through FEGLI.  This Designation of Beneficiary form is known as form SF 2823 ("SF 2823").  Id. ¶ 10.  On May 13, 2009, the CBC received the SF 2823, but noted that it lacked the required witness signatures, and therefore it returned the form to Mr. Talley.  Id. ¶ 26.

Upon receipt of the returned form, Mr. Talley completed a second SF 2823 form, and again went to the Financial Management Office and asked Navy personnel to witness his signature on the second SF 2823 form.  Id. ¶¶ 27-28.  The United States contends that two employees signed as witnesses, and they then returned the witnessed form to Mr. Talley, who took it with him.  Id. ¶¶ 29-30.  Plaintiff again alleges that Mr. Talley left the form to be forwarded by the Financial Management Office to CBC.  See Pl. Opp'n at 2-3.  The SF 2823 specifically stated that the insured "must sign this form.  Two people must witness the signature and sign as witnesses.  The Insured's agency . . . must receive the designation before the Insured's death."  Id. ¶ 41.  The United States indicates that the CBC was Mr. Talley's "employing agency," while Plaintiff denies that the CBC was the sole employing agency.  Id. ¶ 32; Pl. Response to SUMF ¶ 32.

> On January 30, 2010, Mr. Talley died. SUMF ¶ 37. Because the new SF 2823 form was not received by the CBC before his death, the only form in Mr. Talley's official personnel file considered valid by the United States was the one from 1992 that designated his son as his sole beneficiary. See id. ¶ 38. The insurance proceeds were disbursed accordingly.
>
> On March 2, 2011, Plaintiff filed her complaint, naming both the United States and Metropolitan Life Insurance Company ("Metlife") as defendants for their roles in her "being wrongfully denied and deprived of the insurance proceeds to which she was due." Compl. ¶ 20. She sought damages in the amount of $235,000.00, the amount she would have received as the beneficiary of her husband's life insurance policy. On March 28, 2013, this Court granted Metlife's motion for summary judgment, finding that Plaintiff's claim that Metlife had paid the policy benefits too quickly to the beneficiary, Walter Talley IV, lacked merit and did not support a finding of negligence as a matter of law. On the same date, the Court granted the motion of the United States to dismiss the complaint on jurisdictional grounds. The Court found that Plaintiff did not identify an analogous local law under which she could recover, as required by the FTCA. However, the Court dismissed the claim without prejudice and gave Plaintiff leave to amend her complaint within 30 days of the issuance of the Order dismissing the case. See ECF Doc. No. 39.

Talley v. United States, Civ. No. 11-1180, 2014 WL 282680, at *1-2 (D.N.J. Jan. 24, 2014) (ECF Doc. No 51)

After Plaintiff amended her complaint, the United States again moved to dismiss the amended complaint on jurisdictional grounds. Because Plaintiff again did not identify an analogous cause of action under local law in her complaint, the Court dismissed the amended complaint pursuant to an Opinion and Order of January 24, 2014, but granted Plaintiff leave to amend the complaint. Plaintiff's motion to file a Second Amended Complaint is now before the Court.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, leave to amend pleadings shall be "freely give[n]" when "justice so requires." Fed. R. Civ. P. 15(a)(2). In Foman v. Davis, 371 U.S. 178

(1962), the Supreme Court articulated the liberal policy of allowing amendments underlying Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman, 371 U.S. at 182; see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

In determining if a proposed amendment should be denied based on futility grounds, courts employ the "same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010) (citations omitted); see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). Under Rule 12(b)(6), a motion to dismiss may be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Id. at 555; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

## III. DISCUSSION

Under the doctrine of sovereign immunity, the United States "is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit." CNA v. United States, 535 F.3d 132, 140–41 (3d Cir. 2008) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  The FTCA provides a limited waiver of sovereign immunity, making the Federal Government liable to the same extent that "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also United States v. Olson, 546 U.S. 43, 46 (2005).  Thus, to establish jurisdiction under the FTCA, a litigant must identify a cause of action recognized in the relevant jurisdiction under which an analogous private individual would be liable.  See Cecile Indus., Inc. v. United States, 793 F.2d 97, 100 (3d Cir. 1986); Indian Towing Co. v. United States, 350 U.S. 61, 75 (1955).  This "local law" requirement, as some courts have coined it, must be satisfied before the United States can be considered to have waived its sovereign immunity.  See Olson, 546 U.S. at 44; see also Cecile, 793 F.2d at 100.  If an analogous private party defendant would not be liable under the same circumstances, a district court lacks subject matter jurisdiction.  See Wake v. United States, 89 F.3d 53, 57 (2d Cir. 1996) ("[s]overeign immunity is jurisdictional in nature."); United States v. Spelar, 338 U.S. 217, 218 n.3 (1949) ("Local law must be pleaded since the Federal Tort Claims Act permits suit, only where the United States, if a private person, would be liable . . . in accordance with the law of the place where the act or omission occurred.").

      The Court must therefore analyze Plaintiff's proposed Second Amended Complaint to determine whether it would state a claim against a similarly situated private employer or life insurance plan administrator.  The United States argues that Plaintiff's tort claims would not be viable against a private employer, because such claims connected with the administration of an employer-sponsored life insurance policy would be preempted by the Employee Retirement

5

Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Def.'s Opp'n at 17-18. Plaintiff does not dispute that ERISA is an analogous scheme to FEGLI, but argues that her claims would not be preempted by ERISA against a private employer because she is not seeking to enforce the policy provisions, but rather is attempting to hold the United States liable for distinct tortious acts. Pl.'s Mot. Amend at 2, 5.

The ERISA statutory scheme applies to all employee benefit plans established or maintained by employers engaged in commerce or in any industry affecting commerce. 29 U.S.C. § 1003(a). It indicates that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the ERISA framework, other than those to which certain enumerated exceptions apply. 29 U.S.C. § 1144(a). Thus, "[c]ommon law causes of action sounding in tort and contract, to the extent they relate to ERISA benefits, fall under the express pre-emption clause." Groh v. Groh, 889 F. Supp. 166, 170 (D.N.J. 1995) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987)).

While it appears that no court within the Third Circuit has been presented with a case involving extension of the preemption doctrine to the FTCA context, the Ninth Circuit has addressed a negligence claim asserted against the United States in connection with the administration of a federal benefits plan, and affirmed its dismissal because it would be preempted by ERISA if brought against a private employer. In Clark v. United States, 321 F. App'x 672 (9th Cir. 2009), the district court granted the United States' motion to dismiss in connection with the plaintiffs' negligence claim. Id. at 673. The plaintiffs had alleged that the government negligently processed an application for federal benefits, losing the application twice and incorrectly informing the applicant about the availability of interim payments. Clark v.

6

United States, Civ. No. 07-805, 2007 WL 2358630, at *1 (N.D. Cal. Aug. 17, 2007).[1] The court found that the key to whether preemption applies is whether the state law tort claims, and not the tort laws themselves, related to an ERISA plan. Id. at *4. The court found that because the "allegedly negligent conduct" consisted of the negligent processing of a claim for disability retirement benefits, the "claims relate directly to the objectives of ERISA and, what would be in the private sector, an ERISA-governed relationship." Id. The court thus granted the motion to dismiss, finding that the federal government would not be liable "if it was a private person in like circumstances." Id. The Ninth Circuit affirmed in a short opinion, finding that "to the extent the [plaintiffs] identified a cognizable tort under applicable local law, it would be preempted by [ERISA] against a private employer." Clark, 321 F. App'x at 673.[2]

Plaintiff relies primarily on a United States Supreme Court case, Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), in order to distinguish Clark and in support of her argument that her claims would not be preempted under ERISA against a private employer. In Davila, the plaintiffs sued their employee health benefits plan under Texas state statutory law in connection with the plan's denial of certain medical benefits. Id. at 204-05. The Fifth Circuit had held that the plaintiffs' state-law claims were not preempted by ERISA because they were "not seeking reimbursement for benefits denied them" them but instead were seeking to recover for "tort damages arising from an external, statutorily imposed duty of ordinary care." Id. at 206 (internal quotations omitted). The Fifth Circuit found that the claims were not preempted because the

---

[1] The plaintiffs in the Clark case also set forth a number of other allegations unrelated to negligence, such as disability-based discrimination, the failure of a denial of benefits letter to meet certain statutory requirements, and fraudulent misrepresentation. Clark, 2007 WL 2358630, at *1.

[2] Another case cited by the United States in support of their argument for preemption, Bradley v. CareFirst BlueCross BlueShield, Civ. No. 13-98, 2013 WL 6795834 (S.D. Ohio May 13, 2013), appears to be the brief of a party, and not actually an opinion pertaining to a decided case.

state statute did not duplicate the causes of action in the ERISA enforcement provision. Id. The Supreme Court reversed the Fifth Circuit, finding that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id. at 209 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987)). The court found that the hallmark of ERISA preemption is when the suit complains of a denial of coverage that the employee is only entitled to because of the terms of an ERISA plan. Id. at 210. It further held that "if an individual, at some point in time, could have brought his claim under [the ERISA enforcement mechanism], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA . . . . Id. at 210.

Here, Plaintiff seeks to avoid preemption by arguing that she does not "seek to enforce her rights under the FEGLI plan, nor does she seek clarification concerning current or future benefits under FEGLI." Pl.'s Mot. Amend 5. She instead seeks to characterize her claims as breaches of the common law duty to exercise reasonable care in processing, handling, and filing Mr. Talley's plan documents. Id. She further describes her claims as damages resulting from tortious acts or omissions, rather than policy benefits, although she acknowledges that "the measure of damages is established by the face value of the policy." Id.[3] Plaintiff in so characterizing her claims misses the point of the holding in Davila, and advances an argument closely aligned with the Fifth Circuit's reasoning that was rejected by Davila. The Supreme

---

[3] In both counts of the proposed Second Amended Complaint, Plaintiff measures her damages in the amount of $235,000, which represents "the face value of the policy." Pl.'s Mot. Amend Ex. A. ¶¶ 27, 37.

8

Court's holding was not based upon how the plaintiff brings her claim procedurally, but upon whether a plaintiff "could have brought [her] claim" under ERISA's enforcement provision. Davila, 542 U.S. at 210. Here, Plaintiff could have brought a claim under the enforcement statute against a private employer, which allows a participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B).[4] Thus, were the suit filed against a private employer, it would seek to duplicate the ERISA civil enforcement remedy through a state-law cause of action, which must result in preemption. Davila, 542 U.S. at 209.

As the United States points out, claims against private employers asserting state-law causes of action for the allegedly negligent or otherwise tortious administration of life insurance and other benefit plans have been frequently found to be preempted by ERISA. See Turner v. CIGNA Grp. Ins., Civ. No. 10-4103, 2011 WL 2038751, at *4 (D.N.J. May 24, 2011) (where state law claims "are predicated on the existence of an ERISA plan, they are preempted by ERISA); Estate of Casella v. Hartford Life Ins. Co., Civ. No. 09-2306, 2009 WL 2488054 (D.N.J. Sept. 11, 2009) (where a decedent's attempt to change the beneficiary of life insurance plan was not effective because she did not sign a required form, the claims by the alleged "rightful beneficiary" for negligence and breach of contract were preempted by ERISA); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) (employee's claim that his employer tortiously

---

[4] Although Plaintiff does not raise this issue, the Court believes that the fact that the insurance proceeds were ultimately disbursed to Walter Talley, IV would not have deprived Plaintiff of standing as a "participant or beneficiary" to bring an enforcement claim under ERISA. The Third Circuit has held that an alleged beneficiary has ERISA standing if she has a colorable claim that she will prevail in a claim for benefits. Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 75 (3d Cir 2011). This is a less exacting standard that a showing of a likelihood of success on the merits. Id. Further, courts have found ERISA claims to be preempted when the subject of the dispute is whether a change in beneficiary should have become effective but for some alleged error by the employer. See Estate of Casella v. Hartford Life Ins. Co., Civ. No. 09-2306, 2009 WL 2488054 (D.N.J. Sept. 11, 2009); Daughtry v. Birdsong Peanuts, 168 F. Supp. 2d 1287, 1292-93 (M.D. Ala. 2001).

9

excluded him from a severance plan was preempted by ERISA). The Third Circuit has held that where a state law claim relates to an ERISA plan, "it is preempted even if it states an otherwise valid state law claim." 1975 Salaried Retirement Plan v. Nobers, 968 F.2d 401, 406 (3d Cir. 1992). The Supreme Court has construed the term "relate to" broadly, noting that "a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47 (1987) (quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985)). Common law causes of action are also preempted by ERISA if they conflict directly with an ERISA cause of action. Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 512 (3d Cir. 1995) (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)). Thus, Plaintiff's assertion that she is not seeking to enforce her rights under the FEGLI plan cannot prevent the inevitable finding that her claim would fail against a similarly situated private employer.

The Third Circuit case cited by Plaintiff in support of her argument against preemption, Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), is factually dissimilar to the instant case. In that case, the plaintiff hospital entered into a "Network Hospital Agreement" with a consultant that had organized a network of hospitals that agreed to offer medical services at discount rates to beneficiaries of group health plans, with the agreement that the plans, in return, would encourage their beneficiaries to seek treatment at participating hospitals. Id. at 396. The hospital submitted claims for services it had provided to certain ERISA beneficiaries, and then sued the ERISA plan over a dispute involving the amount payable for the claims. Id. The dispute centered around the effect of a clause in the agreement between the hospital and the consultant providing that the discounted rate would be

forfeited under certain circumstances. After the district court found that the action was preempted, the Third Circuit reversed, finding that the claims were not preempted because the hospital lacked standing to sue under ERISA's enforcement provision. Id. at 397, 400. The court found that the defendant had not shown that the hospital had obtained an assignment of claims, which is required for derivative standing. Id. at 401. Thus, the hospital was not a "participant or beneficiary" under ERISA, and because it did not have standing to sue under ERISA, its breach of contract claims were not preempted. Id. at 400.

Although these findings were dispositive, the court went on to analyze whether the claims would be preempted under Davila. The court indicated that because the hospital's claims were based on a separate duty, independent of ERISA, and did not implicate the plan, its claims would not have been preempted even if it had obtained an assignment. Id. at 402-03. It found that "[t]he Hospital's right to recover, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." Id. at 403. The Court summed up the reasons why it found that preemption did not exist:

> (1) the Hospital's claims in this case arise from the terms of a contract–the Subscriber Agreement–that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) [t]he dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the [Hospital], but the amount, or level, of payment, which depends on the terms of the [Subscriber Agreement].

Id. at 403-04 (internal quotations omitted). None of the rationales for the holding in Pascack Valley are present in this case. There is no separate third-party contract that is involved in this suit, the alleged beneficiary is the plaintiff in this action, no ERISA standing issues have been raised by the parties, and the dispute concerns Plaintiff's right to payment. Instead, Plaintiff here

11

seeks to be compensated for what she believes she was entitled to receive under the FEGLI plan, had the beneficiary change been effective.

For the foregoing reasons, it is not necessary to discuss the other arguments set forth by the United States for dismissal. The Court finds that the claims for negligence and breach of fiduciary duty that Plaintiff proposes to assert in her Second Amended Complaint are not cognizable under the FTCA because they would fail against a similarly situated private employer due to ERISA preemption. Because, for the reasons expressed in this Opinion, the Court finds that it would be futile for Plaintiff to make additional attempts to state a claim, the action will now be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend will be **DENIED**, and Plaintiff's Amended Complaint will be **DISMISSED WITH PREJUDICE**. An appropriate order shall issue today.

Dated: 3/26/2014     /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge